599 So.2d 158 (1992)
James Lee THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-449.
District Court of Appeal of Florida, First District.
April 28, 1992.
Michael E. Allen, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.

ON MOTION FOR REHEARING
ZEHMER, Judge.
The state's motion for rehearing filed in this appeal raises for the first time the *159 contention that appellant waived and thus failed to properly preserve for appellate review his objection to the admissibility of the collateral crime evidence based upon his Georgia conviction of sexual battery. In view of the discussion of this waiver issue in the dissenting opinion and the state's attempt to now raise this issue, we revise footnote 1 of the original opinion filed August 30, 1991, to further clarify the reasons for our conclusion that appellant's objection to this evidence was properly preserved for appellate review. The original opinion filed August 30, 1991, remains unchanged except for these revisions to footnote 1 in the revised opinion.
After careful and lengthy consideration, we deny the state's motion for rehearing on this and all other grounds. The original opinion is withdrawn and the following revised opinion is substituted therefor.

REVISED OPINION
James Lee Thomas appeals his conviction for sexual battery of a child under the age of twelve in violation of section 794.011(2), Florida Statutes (1987). He raises four points on appeal. He contends, first, that the trial court erred in admitting similar fact evidence of other crimes; second, that the court erred in admitting the videotape testimony of the victim; third, that the evidence presented at trial was legally insufficient to support his conviction; and fourth, that the trial court erred in failing to impose a sentence within the sentencing guidelines.
As to the third point challenging the legal sufficiency of the evidence, we affirm without discussion. The child victim's testimony is sufficient to send the case to the jury for decision.
We reverse on the first point, however, holding that the trial court's admission of the similar fact evidence of another crime is error requiring remand for a new trial because the similar fact evidence offered by the state and the facts underlying the instant case are not "strikingly similar" and fail to "share some unique characteristics or combination of characteristics which sets them apart from other offenses," Heuring v. State, 513 So.2d 122, 124 (Fla. 1987), and such evidence is not relevant to prove any material fact in issue. § 90.404(2)(a), Fla. Stat. (1987). In view of this disposition, we find it unnecessary to reach the two remaining points.
Thomas was charged by information with committing sexual battery on M.M., a child under 12 years of age, by penetrating her vagina with his penis in March 1988. Prior to trial the state filed a notice of intent to rely on similar fact evidence that stated in part:
On or about June 9, 1976, the defendant committed statutory rape, in Georgia, on a thirteen year old female. On December 7, 1976, he pled guilty to this offense in Bainbridge, Decatur County, Georgia (Case #F-575) before Superior Court Judge Culpepper, and was ordered to serve two years in prison and eight years on probation.
The notice then described the incident during which the female victim was driven to a plum orchard where the defendant had nonconsensual sexual intercourse with her.
Appellant argues that evidence of the Georgia crime should not have been admitted.[1] He points out that the incident *160
*161 occurred more than twelve years prior to the instant offense, no familial or custodial setting was present in either case, and there was no blood relationship between appellant and the victim in the earlier case or between him and the alleged victim in this case. Furthermore, he argues, he pleaded guilty in the earlier case but denied his guilt in the instant case. Appellant contends that the two incidents are not so uniquely similar as to make the evidence of the earlier incident admissible under section 90.404(2)(a), Florida Statutes (1987),[2] codifying the so-called Williams rule.[3] On the contrary, he argues, the sole probative value of this similar fact evidence is to show his propensity to commit the crime charged, not to prove any material fact in issue, and section 90.404(2)(a) explicitly prohibits the admission of evidence solely to prove propensity.
The state counters that remoteness in time alone does not preclude admission of similar fact evidence. It argues for admissibility on the grounds that the evidence of the earlier incident is "relevant to show that Appellant availed himself of the opportunity to sexually molest young girls in his custody when the situation presented itself," that appellant occupied a position of trust in a familial context in both cases so the "familial setting" rule should apply, and that "the similar fact evidence in this case establishes a pattern of criminality that makes the prior act relevant to the commission of the act in question under" the Williams decision.
In the 1976 incident in Georgia, the victim was not related to appellant by blood, although she testified that "he was supposed to be my uncle" because he was married to her mother's sister. Appellant did not occupy the same household with her. The thirteen-year-old victim testified that appellant had come to her house and taken her and three other children to a plum orchard while her mother was away in Atlanta, that the other children were dropped off at the orchard, and then she was taken by appellant down a road where the two of them got out of the car and appellant forced her to have sexual intercourse on the ground in front of the car.
In the incident now under review, the alleged child victim lived with her mother and two sisters, one of whom had been fathered by appellant. Appellant did not live in the household, and there was no blood relationship between appellant and the child victim. The incident took place on an occasion when appellant was visiting the house, and he and the child rode in his car to the store to purchase something for her mother. The child, nine years old at the time of the incident, testified that appellant took her down a dark road and that the sexual activity occurred on the front seat of the car, and then they continued on to the store and then home. Appellant's testimony denied turning down the road and having any sexual activity with the child. There is no dispute about the fact that appellant and the child went to the store and returned on this occasion. The main issue in dispute is whether appellant stopped on the way to the store and committed the battery as claimed by the child.
The issue under discussion is governed by the pertinent provisions in the Florida Evidence Code. Section 90.401 states, "Relevant evidence is evidence tending to prove or disprove a material fact." Section 90.402 states, "All relevant evidence is admissible, except as provided by law." Section 90.403 states, "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." The sponsor *162 note to this section explains that "nothing that fails to meet the tests of §§ 90.401 and 90.403 may be admitted." Accordingly, section 90.404(2)(a) recognizes the interplay of section 90.401 and 90.403 by specifying that "similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue." Since similar fact evidence of other crimes is inherently prejudicial to a criminal defendant's right to a fair trial, such evidence is admissible under section 90.404(2)(a) only to prove a material fact in issue, that is, a material fact that is genuinely in dispute.
In view of the obvious conflicting nature of the interplay between sections 90.403 and 90.404(2)(a), there appears to be some inconsistency in the reported decisions involving the admission of similar fact evidence of other crimes in cases of sexual battery against children. However, the trend in the majority of these cases is seemingly toward a relaxation of the standard of admissibility.[4] While the supreme court's decision in Heuring appears to lessen the usually stringent rules governing the admissibility of evidence of other similar criminal acts in respect to cases in which the defendant occupies a position of trust in the familial context, in so doing the court reemphasized the following strict standard of relevance:
Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense. [Citations omitted.] Such evidence is, therefore, inadmissible if solely relevant to bad character or propensity to commit the crime. [Citations omitted.] To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristics which sets them apart from other offenses.

513 So.2d at 124 (emphasis added). Continuing, the court quoted from People v. Haston, 69 Cal.2d 233, 444 P.2d 91, 70 Cal. Rptr. 419 (1968), to the effect that even where the offense charged and the collateral offense share certain marks of similarity, these marks may also be shared equally by other acts or offenses that may be committed by persons other than the defendant, and thus the marks of similarity between the charged and the collateral offense sought to be admitted must operate logically to set these two offenses well apart from all other crimes of the same general variety that may have been committed by someone other than the defendant. The supreme court then stated that, "in addition to the above requirements, the evidence must be relevant to a material fact in issue such as identity, motive, opportunity, plan, knowledge, or absence of mistake or fact," citing section 90.404(2)(a), Florida Statutes. 513 So.2d at 124 (emphasis added).
A critical aspect of the test of admissibility under section 90.404(2)(a) is not only whether the charged and collateral offenses are "strikingly similar" and "share some unique characteristics which sets them apart from other offenses," but also whether such evidence tends to prove a material fact issue that is in dispute. If there is no bona fide dispute over a material fact that the similar fact evidence is offered to prove, then the probative value of such evidence necessarily has significantly less importance than its prejudicial effect, and the evidence should be excluded under section 90.403.
For example, in Squires v. State, 450 So.2d 208 (Fla. 1984), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984), the supreme court approved the admissibility of evidence of other criminal acts as relevant to prove Squires's violent trait of character, but the court was careful to point out that such evidence was admissible *163 only because offered by the state after the defendant had, through the testimony of an officer and his own testimony, attempted "to demonstrate his non-violent character" and thereby place "this trait in issue." 450 So.2d at 210. Likewise, in Beasley v. State, 503 So.2d 1347 (Fla. 5th DCA 1987), approved, 518 So.2d 917 (Fla. 1988), the district court of appeal held that, in view of the defendant's testimony that he never had an opportunity to be alone with the victim of his charged sexual battery, because she and her sister were together all the time, it became proper to admit testimony by the victim's sister that the defendant also sexually assaulted her when the victim was not present. The supreme court approved the decision on the authority of Heuring. See also In the Interest of C.G., 506 So.2d 1131 (Fla. 2d DCA 1987).
Thus, it is readily apparent that the test of admissibility under section 90.404(2)(a) and Heuring is primarily one of relevancy to prove disputed issues of material fact. Whether a relevant material fact is in issue is not necessarily established by the defendant's plea of not guilty (which denies each essential element of the charged offense), but must be determined from the particular facts and circumstances involved in each case, i.e., has the defendant put such fact in issue. This construction and application of section 90.404(2)(a) brings it into complete harmony with the purpose of sections 90.401 and 90.403.
We have carefully reviewed the record to determine in what respects the evidence of the Georgia incident was relevant to prove any material fact in issue, and how the prior criminal episode tended to prove such disputed issue of fact. Obviously, the Georgia episode was not admitted to prove each of the issues described in section 90.404(2)(a). The trial court never ruled which disputed issue of fact the evidence was admitted to prove, and simply instructed the jury that the evidence could be considered in connection with each of the issues described in section 90.404(2)(a). However, the prosecutor's argument to the jury concerning the Georgia offense suggested that the two episodes proved "a striking plan or scheme that runs throughout both of those, and it shows, and the testimony is also admissible to go to the point of opportunity. The defendant creates these opportunities and has taken advantage of them." (R. 105). Based on the state's argument at trial and in its brief on appeal, we have concluded that the state contends only that this collateral crime evidence was admissible to prove two issues of fact: opportunity, and a scheme or plan.
There are fatal flaws in the state's contention. Neither opportunity nor scheme or plan is a disputed factual issue relevant to specific elements of the charge against appellant. None of the elements of the charged sexual battery requires the state to prove a scheme or plan; nor do the elements of the offense require proof of opportunity. Although the state had to prove that appellant was present at the time and place when the charged offense allegedly occurred, appellant admitted he was present at the time and place, and his defense at trial did not create any issue as to "opportunity" to commit the offense.
Even if it may be fair to say that the Georgia episode demonstrates that appellant had previously taken advantage of a similar opportunity to commit a sexual offense on a young girl, the only reasonably permissible inference to be drawn from that fact is the defendant's propensity to commit an offense, an improper purpose under section 90.404(2)(a). Opportunity in this sense is not what the statute speaks to by its reference to "opportunity" being in issue. Cf. Beasley v. State, 503 So.2d 1347. Both the child's testimony and appellant's testimony at trial confirmed his presence at the time the alleged offense was committed, so obviously appellant's opportunity to commit the alleged acts was not in contention. Therefore, it is difficult to understand how opportunity was ever a material fact in issue.
Nor do we discern how the 1976 Georgia episode demonstrates a plan or scheme of unique criminal conduct sufficient to support an inference that appellant committed the sexual battery in 1988. There simply is *164 no unique fact or characteristic involved in either incident that supports an inference from the occurrence of the Georgia episode that appellant employed a like plan or scheme in the instant case. Had the proof shown, for example, several incidents demonstrating that appellant committed a similar offense almost every time he took a child for a ride alone, no doubt we would be confronted with a permissible inference based on the Georgia incident pointing to guilt; but two isolated incidents totally unrelated in any respect and separated by 12 years simply do not prove a scheme or plan in the sense contemplated by section 90.404(2)(a).
There is likewise no basis for treating either episode as one involving the requisite familial relationship such as that involved in the supreme court's decision in Heuring. The only significant fact common to both incidents is that appellant purported to have sex with an underage child. That single similarity alone without some other unique characteristic is simply insufficient, however. We have not been referred to any authority for the proposition that sexual battery on underage children is so unique in itself that it is uniformly admissible under section 90.404(2)(a).
Thus, we hold on this record that the evidence of the Georgia episode is not demonstrably relevant to any material fact in issue and fails to satisfy the "strict standard of relevance" set forth in Heuring and section 90.404(2)(a). The facts involved in these two episodes are fairly descriptive of the usual sexual battery case of this nature coming before this court, and nothing about the circumstances of these two events appears to be "strikingly similar" and to share "some unique characteristics or combination of characteristics which sets them apart from other offenses." Heuring, 513 So.2d at 124. As stated by the supreme court in Peek v. State, 488 So.2d 52, 55 (Fla. 1986), "If we held the testimony concerning Peek's collateral crime admissible under these circumstances, any collateral crime evidence would be admissible as long as the crimes were of the same type and were committed within the same vicinity." See also Edmond v. State, 521 So.2d 269 (Fla. 2d DCA 1988). The state simply has not satisfactorily explained how and why the evidence of the Georgia episode tends to prove a material fact in issue with respect to the charged offense.
The admission of the evidence of the Georgia offense violated sections 90.403 and 90.404(2)(a). "The admission of improper collateral crime evidence is `presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.'" Peek v. State, 488 So.2d at 56. The Georgia episode was a significant part of the state's case against appellant and cannot under the circumstances be treated as harmless under the test stated in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The judgment of conviction is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
SMITH, J., concurs.
MINER, J., dissents with opinion.
MINER, Judge, dissenting with opinion.
In a revised opinion issued on rehearing, the majority has concluded that the trial court reversibly abused its discretion in admitting, as similar fact evidence, the details of a sexual assault committed by appellant on another child in Georgia some 12 years earlier. My review of the record persuades me that appellant failed to preserve this issue for appellate review and, further, that the disputed evidence was indeed admissible to corroborate the testimony of the child victim in this case. Accordingly, I respectfully dissent.
The stated grounds for reversal of appellant's conviction are that the similar fact evidence admitted below and the facts of the instant case are not "strikingly similar", do not "share some unique characteristic or combination of characteristics which sets them apart from other offenses" and that such evidence is not relevant to prove any material fact in issue.
*165 In addressing the areas of my disagreement with the majority opinion, I find it necessary to briefly recount certain portions of the record on appeal. Pre-trial, the state filed notice that it intended to rely, in part, on so-called Williams Rule evidence that in 1976, appellant pled guilty to the statutory rape of one T.J., the 12-1/2 year old niece of his common law wife. At a hearing in chambers immediately before the jury selection phase of appellant's trial commenced, the state sought a ruling on the admissibility of this evidence. In seeking to have the evidence excluded, appellant's trial counsel specifically argued only that it was "old" and that its only purpose was "to inflame the jury against Mr. Thomas." During his argument, counsel previewed the defense appellant intended to offer:
"There are some allegations, and I think we'll try to prove them at trial, that the girl's mother, Clara [M.], is the instigator of the entire affair, trying to get money from Mr. Thomas so she can buy a car.
.....
Our defense that we're going to intend to show today is that this is a plan by the mother to get money from Mr. Thomas."
Counsel added:
"Now, in the state's case today, I believe their most damning evidence, if you will, is the little girl's testimony that Mr. Thomas sexually battered her. I don't believe there's going to be any corroborative evidence whatsoever."
The trial court rejected counsel's argument, such as it was, and ruled that T.J. would be permitted to testify in accordance with the state's notice. T.J. did, in fact, so testify during the afternoon of the following day, without objection.
On appeal, appellant's appellate counsel represents that appellant's trial counsel argued below against admissibility of the questioned evidence on the grounds that it was (1) stale and too remote; (2) was admitted solely to show appellant's propensity to commit the charged crime in a non-familial context; and (3) was not uniquely similar enough to be admitted.
A careful review of the transcript of the chambers hearing at which the admissibility of the evidence at issue was determined reflects that appellant's trial counsel did, in fact, refer to the evidence as "old." With regard to propensity, following is the sum total of what counsel had to say on that subject:
"As to propensity, Mr. Thomas had had these children stay at his house in the past several years for periods of time. And from our deposition of the victim in the case, she said nothing happened, nothing has ever happened to her before, other than this one time.
So, I don't think this prior case could be used to show propensity or  what's the word I'm thinking of  the fact that the conditions were there that he could take advantage of. Because I think that with the children staying at his house over the past several years and he having visited their house during the past several years, the opportunity must have arisen many many times."
The hearing transcript is wholly and totally devoid of any defense argument with respect to uniqueness and/or similarity of the circumstances surrounding the instant offense and the Williams Rule offense. Likewise, as can be gleaned from the above quoted reference to propensity, counsel did not argue that the evidence was inadmissible because it tended to show appellant's propensity or bad character. He argued just the opposite  that such evidence did not show propensity. He made no argument whatsoever regarding consanguinity or familial or custodial authority and did not once contend that such evidence was not relevant to prove some material fact in issue. In sum, other than urging that it was "old" and would "inflame" the jury, appellant's trial counsel did not argue anything specific in support of his effort to exclude the evidence in question.
In an unbroken line of cases stretching back almost to the turn of this century, the Florida Supreme Court has been committed to the proposition that an appellate court will consider the grounds or objections to the admissibility of evidence as were specifically made in the trial court and cannot *166 consider those objections to admissibility of evidence which are raised for the first time on appeal. Hoodless v. Jernigan, 46 Fla. 213, 35 So. 656 (1903); Cross v. Aby, 55 Fla. 311, 45 So. 820 (1908); Tampa Elec. Co. v. Charles, 69 Fla. 27, 67 So. 572 (1915); Metropolis Co. v. Croasdell, 145 Fla. 455, 199 So. 568 (1941); Lineberger v. Domino Canning Co., 68 So.2d 357 (Fla. 1953); Williams v. State, 386 So.2d 538, 541 n. 6 (Fla. 1980); and Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981). Over the years, as the occasion has arisen, each of Florida's five intermediate appellate courts has adopted this principle. Rezzarday v. West Florida Hospital, 462 So.2d 470 (Fla. 1st DCA 1984); King v. Estate of King, 554 So.2d 600 (Fla. 1st DCA 1989); Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy, 180 So.2d 503 (Fla. 2d DCA 1965); Chaudoin v. State, 118 So.2d 569 (Fla. 2d DCA 1960); Metropolitan Dade County v. Cox, 453 So.2d 1171 (Fla. 3rd DCA 1984); DeSantis v. Acevedo, 528 So.2d 461, 462 n. 1 (Fla. 3rd DCA 1988); Nat Harrison Associates, Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971); Herman v. State, 372 So.2d 996 (Fla. 4th DCA 1979); Parry v. Nationwide Mut. Fire Ins. Co., 407 So.2d 936 (Fla. 5th DCA 1981) and Swan v. Florida Farm Bureau Ins. Co., 404 So.2d 802 (Fla. 5th DCA 1981). However, today, the majority takes leave of this time honored precedent, basing its decision to reverse on grounds not argued by appellant below but raised for the first time in this appeal.
Even if it could possibly be concluded on the record before us that appellant's trial counsel made the specific arguments attributed to him by appellate counsel, the issue of the trial court's admission of collateral crime evidence was waived for purposes of appellate review because defense counsel failed to object to such evidence when it was introduced at trial. In Correll v. State, 523 So.2d 562, 566 (Fla. 1988), cert. den., 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988), habeas corpus den. 558 So.2d 422 (Fla. 1990), a unanimous Florida Supreme Court, citing to Phillips v. State, 476 So.2d 194 (Fla. 1985) and German v. State, 379 So.2d 1013 (Fla. 4th DCA), cert. den. 388 So.2d 1113 (Fla. 1980), held that "[e]ven when a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review."
The majority, in footnote 1 on p. 159 et seq. of the majority opinion, first suggests that the rule on waiver/timely objection, as announced in Correll, is not applicable where the defendant's objections are presented immediately prior to trial. It reasons that a timely objection at trial would be unnecessary and futile where the defendant's objections had been overruled so soon before the trial commenced. However, the authority cited in the footnote as supportive of this reasoning is in no way related to the issue involved in the instant case. Mercer v. State, 40 Fla. 216, 24 So. 154, 159-60 (1898) and Webb v. Priest, 413 So.2d 43 (Fla. 3rd DCA 1982) only make it unnecessary to raise additional objections after an objection has already been made and rejected at trial. The Am.Jur. cite makes it clear that while a witness is relating objectionable testimony in answer to counsel's questions at trial, opposing counsel need not repeat an objection as the witness answers each question. At best, these authorities hold only that an objection, once made at trial, is not subsequently waived by counsel's failure to make additional identical objections when similar testimony is later introduced. They do not even begin to suggest that an objection is futile simply because a defense objection to the admissibility of evidence was rejected prior to trial.
In German, cited in Correll, the Fourth DCA held that appellate review was waived by the defendant's failure to make a timely objection at trial though the court noted that the defendant's pre-trial motion in limine was denied "immediately prior to trial." German v. State, 379 So.2d at 1013. (Emphasis added). Similarly, in Bonham v. State, 450 So.2d 269 (Fla. 3rd DCA 1984), the Third DCA held that the defendant waived his right to appellate review of the trial court's denial of his motion to suppress, where he unsuccessfully moved to suppress evidence before trial but *167 did not raise an objection at trial. The court there rejected the majority's reasoning here when it stated: "We find no merit in, and certainly no support for, the defendant's contention that an exception to this well-settled rule [requiring an objection at trial] exists where the pre-trial motion to suppress is heard and decided immediately before the commencement of trial." Bonham, 450 So.2d at 269. Thus, it can be seen that the majority's reasoning on this point was specifically rejected in Bonham[1] and is inconsistent with the facts in German. I, too, find no support for the majority's position.
Seeking to further justify its reasoning on this issue, in the same footnote, the majority states that the trial court's pre-trial ruling on the similar fact evidence "has been treated by both the state and defense counsel as conclusive on the issue without the necessity of further objection when the evidence was actually put before the jury." Since there is not one whit or scintilla of factual support in the record for this conclusion, I can only suppose that it is predicated on the majority's interpretation of the state's failure to raise the preservation issue in its answer brief. Otherwise stated, the majority seems to suggest that a trial court's ruling of intention to admit certain evidence at trial, made pre-trial but close in point of time to the commencement of trial, together with the state's subsequent failure to raise the preservation issue in its answer brief on appeal somehow combines to produce an "unwaiver" of that which a defendant waived by failing to object to the evidence at the time it was offered at trial. Extensive research has uncovered no support for this novel proposition either within or without this state.
Section 90.104(1)(a) Florida Statutes, requires a timely objection in order to preserve a point for appeal. See Holley v. State, 523 So.2d 688 (Fla. 1st DCA 1988). Objections which are not timely made are waived. Roundtree v. State, 362 So.2d 1347 (Fla. 1978) and Jones v. State, 360 So.2d 1293 (Fla. 3rd DCA 1978). In Crespo v. State, 379 So.2d 191 (Fla. 4th DCA 1980), cert. den., 388 So.2d 1111 (Fla. 1981), the Fourth DCA determined that it was "unable to consider" the appellant/defendant's assertion of error in the admission of Williams Rule evidence due to his failure to make a contemporaneous objection at trial. See also, Swan v. Florida Farm Bureau Ins. Co., supra. and Steinhorst v. State, 412 So.2d 332 (Fla. 1982). Since the absence of a contemporaneous objection renders the appellate court unable to address the alleged error, I believe it to be totally irrelevant whether or not the state raises the absence of a defense objection below in its answer brief. See also, Anderson v. State, 549 So.2d 807 (Fla. 5th DCA 1989), rev. den., 560 So.2d 232 (Fla. 1990) (citing Correll in holding that the defendant waived error in the admission of Williams Rule evidence by failing to make a contemporaneous objection at trial; an unsuccessful motion in limine made during opening argument was insufficient to preserve the issue for appeal).
Although I do not wish to further belabor the preservation issue, I feel compelled to make one last observation about the majority's position on the matter. In footnote 1, my colleagues seem to recognize the inadequacy of appellant's pre-trial objection. I so conclude because as soon as they assert that the matter was thoroughly discussed prior to trial, they immediately proceed to speculate that an objection was made at trial in an unrecorded side bar conference held just prior to introduction of the evidence in question. Although they note that "it is not entirely clear what transpired" at the conference, the majority concludes that a defense objection to the Williams Rule testimony must have been made at that time. It bases this conclusion on the following facts: 1) the giving of the Williams Rule instruction immediately after the unrecorded conference; and 2) when the trial court denied appellant's motion for new trial, which motion was based upon the inadmissability of the collateral *168 crime evidence, the court stated that argument on the issue "was made prior to the presentation of that testimony."[2]
Rather than indulge in surmise and conjecture about what transpired at the unrecorded bench conference, it seems to me that the appellant is in the best position to enlighten us about whether or not an objection was made at trial to the collateral crime evidence. Indeed, we have only to read paragraph 15 of appellant's response to the state's motion for rehearing to find that "[D]efense counsel vigorously opposed the introduction of this evidence immediately prior to trial and raised the issue a second time at the hearing on the motion for new trial." (Emphasis added.) Since even the appellant does not argue that he made a preserving objection to the Williams Rule evidence at trial, I confess to some discomfiture that the majority would argue this position for him. In my view, given appellant's representation, it is wholly unnecessary to read volumes from a blank record; to judicially create a scenario wherein the appellant's silence at trial is interpreted as an objection and the state's silence in the answer brief it was not required to file in the first place is interpreted as a recognition that appellant made an objection at trial. In sum, in his rehearing response, appellant acknowledges that he did not object to the similar fact evidence at trial as required by the cases cited above. Accordingly, we are unable to address on appeal the matter of the admission of the evidence in question. Crespo v. State, supra.
Lastly, on the merits, I disagree with the majority's conclusion that the similar fact evidence admitted below was not relevant to prove any material fact in issue. Witness credibility is a material fact always in issue[3] and, in my view, the evidence in question was admissible under Heuring v. State, 513 So.2d 122 (Fla. 1987) and Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. den., 529 So.2d 693 (Fla. 1988) to corroborate the testimony of the child victim, whose credibility most assuredly was placed in issue by appellant's defense that the charge against him was fabricated by the child's mother.
In Heuring, the defendant was charged with having committed sexual battery upon his step-daughter in violation of sections 794.011(4)(e), Florida Statutes (1977-1983) ("offender is in a position of familial, custodial, or official authority over the victim and uses this authority to coerce the victim to submit"). The trial court permitted the defendant's adult daughter to testify that she had been sexually abused by the defendant years earlier when she was roughly the same age as the victim/step-daughter. In supporting the admissibility of the testimony, the supreme court noted that "[c]ases involving sexual battery committed within the familial context present special problems." Id. at 124. Specifically, in these cases, it is the credibility of the victim which becomes the focal issue. Because the alleged perpetrator is a parent, identity, a common basis for admitting evidence of collateral crimes, cannot be used to support admissibility. In such cases, the court held that the testimony could be used to corroborate the victim's testimony.
In Calloway, the defendant was accused of committing sexual battery on his step-daughter; as in Heuring, the charged offense referred to the defendant's "position of familial or custodial authority." See § 794.041(2), Fla. Stat. (1985). The trial court permitted testimony from two girls (the victim's friend and an aunt, both of whom were roughly the same age as the victim) who described sexual batteries committed upon them by the defendant. Citing Heuring, this court affirmed the admission of the testimony to corroborate that of the victim. The court rejected the defendant's *169 argument that the collateral crimes were not sufficiently similar to the charged offense. "The rigidity with which the similarity requirement is applied in cases wherein the collateral crimes are introduced to prove a fact such as the identity of the perpetrator is not necessary in other situations such as the instant case where the evidence is relevant to corroborate the victim's testimony." Calloway, 520 So.2d at 668.
Unlike Heuring and Calloway, the instant case does not involve a charge of sexual battery committed in the familial context.[4] As the majority notes "[a]ppellant did not live in the household, and there was no blood relationship between appellant and the child victim." From this, the majority concludes that there "is no basis for treating either episode [of sexual battery] as one involving the requisite family relationship such as that involved in the supreme court's decision in Heuring." (Emphasis in majority opinion). The majority's attempt to distinguish the instant case from Heuring and Calloway based on the lack of consanguinity between the appellant and his victim is, in my view, contrary to the rationale upon which Heuring is based.
Admissibility in Heuring and Calloway is predicated upon the victim's familiarity with the perpetrator. This familiarity eliminates identification as an issue at trial and leaves the child victim's credibility as the critical question for the jury. In such cases, evidence that the defendant committed a similar crime is admissible to corroborate the victim's testimony and to refute the defendant's assertion that the testimony was fabricated. This rationale is as applicable where the victim is closely acquainted with the defendant, as in the instant case, as it would be if the defendant and victim were related by blood. See Ehrhardt, Florida Evidence, § 404.168 (1989 pocket part) ("while the Heuring opinion speaks only to the familial situation, its rationale would seem to be applicable whenever the defense in a sexual battery prosecution is that the victim has fabricated the incident, rather than that the wrong person has been charged"). The UCLA Law Review article, cited by the supreme court in Heuring, does not suggest that corroborative evidence of other sex offenses is limited to offenses committed in the familial context. The author of the article explains:
In cases involving alleged sex offenses where the victim is acquainted with the accused, identity is not at issue. Instead, the victim's credibility will be of paramount importance. The victim's credibility or apparent lack thereof may be determinative on the question of the defendant's ultimate guilt or innocence. In many sex crimes, where the only eye witnesses are the complaining witness and the perpetrator, and where there is a dearth of any independent physical evidence tending to establish the crime's commission, admission of corroborative evidence serves the dual purpose of reducing the probability that the prosecuting witness is lying, while at the same *170 time increasing the probability that the defendant committed the crime.
Comment, Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses, 25 UCLA L.Rev. 261, 286 (1977). (Emphasis added). Clearly, this reasoning does not depend upon the existence of a blood relationship or the place a defendant chooses to reside. Familiarity sufficient to eliminate identity as an issue at trial is all that is required.
I would grant rehearing and affirm appellant's conviction and sentence in all respects.
NOTES
[1] We consider this issue properly preserved for appellate review, the contentions and case authorities discussed in the dissenting opinion notwithstanding. We specifically note that the state did not timely argue that this issue was not adequately preserved.

The defense's objection to the admissibility of the collateral crime evidence was first made during the state's proffer of this evidence on the morning of trial at a hearing in chambers just before the judge and counsel went into the court room to select a jury. At this hearing, the court took up several matters that had to be considered out of the presence of the jury. The substance of the collateral crime testimony being offered by the state pursuant to section 90.404(2), Florida Statutes (1989), was made known to the trial judge through the deposition of the collateral crime witness. The state and the defense then argued their respective positions on the admissibility of this evidence under the applicable provisions of the evidence code. The state contended that this evidence was admissible to prove the defendant's common plan or scheme and the defendant's opportunity to commit the offenses, urging this evidence met the prescribed test for relevancy and materiality because such evidence of the defendant's plan proved opportunity. The defense's objection reiterated, among other things, that the evidence was not relevant to any material issue in dispute, that the conviction was too old and remote in time, that it did not prove opportunity or scheme as urged by the state, that it was to be a feature of the trial, and cited to Bryan v. State, 533 So.2d 744 (Fla. 1988), for the proposition that such evidence cannot be admitted to show only bad character or propensity, and "even if it is relevant, it should not be admitted if its probative value is going to be substantially outweighed by its undue prejudice." The court ruled the evidence was relevant and would be admitted, and after discussing the other matters to be taken up out of the jury's presence, adjourned the proceeding in chambers and reconvened in the court room ten minutes later.
The trial transcript indicates that a bench conference was held just before the collateral crime witness was called by the state in its case, but it is not entirely clear what transpired because the conference was noted as "off the record" by the court reporter. We are confident, however, that the trial judge and counsel discussed the collateral crime evidence about to be presented and the court's prior ruling thereon because, at the conclusion of this conference, the court instructed the jury on the limited purpose of the collateral crime evidence it was about to hear without any request for such instruction being made on the record by defense counsel, although such an instruction is to be given only if so requested. § 90.404(2)(b)1.2., Fla. Stat. (1989). At the conclusion of the state's testimony on the Georgia episode, the state offered a properly authenticated copy of the Georgia conviction in evidence; the defendant made no further objection, however, as it had none to authenticity and could urge no further objection to the admissibility of such evidence in view of the court's prior ruling.
At the hearing on appellant's motion for new trial, which again raised the inadmissibility of the collateral crime evidence, neither the prosecutor nor the trial court expressed any concern that appellant's objection had not been properly made or preserved during trial, and they proceeded to argue and rule on the merits of the defense's objection. As further confirmation of our interpretation of the trial record, the court commented on appellant's objection as follows:
The testimony of this defendant's prior sexual battery in Georgia, the argument that was made in the motion for new trial was made prior to the presentation of that testimony. I think it's relevant. I think that's a test that is required to be met. Not only is it relevant but it would meet the old criteria of similar fact testimony. I think that testimony is all properly admissible. (Emphasis added).
In view of this comment, there can be no doubt that the trial judge and the prosecutor were fully aware of the defense's timely objection to this collateral crime evidence, a fact that most likely accounts for the state's not raising the waiver issue until after it was discussed in the dissenting opinion.
We are aware of the decision in Correll v. State, 523 So.2d 562 (Fla. 1988), in which the supreme court indicated that where the defense objected to the use of similar fact evidence in response to the state's notice filed before trial and the trial court ruled it admissible over defense objections, defense counsel's subsequent failure to object when that evidence was admitted during trial waived the issue for appellate review. We find that rule of waiver inapplicable in this case, however, in view of the fact that the trial court's ruling was made on the morning of trial and has been treated by both the state and defense counsel as conclusive on the issue without the necessity of further objections when the evidence was actually put before the jury. The substance of the similar fact evidence was fully discussed as on a proffer when the trial court considered defense counsel's objections at that hearing, and the court's ruling thereon was unequivocal and final. Hence, the purpose of preserving error below, i.e., to afford the trial court an opportunity to consider the issue in question, Corbett v. Dade County Board of Public Instr., 372 So.2d 971, 974-75 n. 3 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1192 (Fla. 1980), was fairly and completely served in this case. The courts of this state have recognized that there is no need to make further obviously vain and futile objections once an issue has been clearly ruled on by the trial judge. Mercer v. State, 40 Fla. 216, 24 So. 154, 159-60 (1898) (when an objection to the introduction of incompetent evidence has been once properly taken and overruled by the court, it is not waived by failure to object to such evidence through subsequent witnesses); Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982) (party not required to renew his objection each time in what would have been an obviously futile gesture). See 75 Am.Jur.2d Trial § 176 (1974). Since this issue was fully considered by the trial court when making its ruling, we see no valid purpose to be served by declining to review the issue at this time on this appeal. Moreover, we cannot overlook the fact that in Correll v. State, 523 So.2d 562 (Fla. 1988), the supreme court, after stating the rule of waiver, nevertheless ruled on the merits of the objection as if an objection had been made.
The state's motion for rehearing acknowledges that this procedural waiver issue was not timely argued in its answer brief. However, in view of the dissent, the state now characterizes its omission as "an oversight" and contends that, "This oversight is not authority for this court to address an issue which, as a matter of law, is procedurally barred" because waived by appellant, and, further, that "the State's failure to apprise the Court of this waiver in its brief most certainly does not constitute an `unwaiver' which confers judicial authority to consider an unpreserved issue." We reject the state's contention that appellant waived his objection to this evidence, not only because the state improperly attempts to insert this issue for the first time on motion for rehearing, but also because this contention is not supported by the record.
[2] Section 90.404(2)(a) provides: "Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity."
[3] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[4] See, e.g., Gould v. State, 558 So.2d 481 (Fla. 2d DCA 1990), quashed on other grounds, 577 So.2d 1302 (Fla. 1991); Padgett v. State, 551 So.2d 1259 (Fla. 5th DCA 1989); Anderson v. State, 549 So.2d 807 (Fla. 5th DCA 1989), rev. denied, 560 So.2d 232 (Fla. 1990).
[1] I believe it to be of no legal moment that Bonham involved a defendant's motion to suppress and the case at hand involved the state's motion to admit. In each case, the defendant sought to exclude certain evidence.
[2] If appellant be believed, argument on the issue was made "prior to the presentation of that testimony". Such argument was made prior to trial which was, indeed, "prior to the presentation of that testimony". To the extent that the majority suggests that argument on the collateral crime evidence was made immediately "prior to the presentation of that testimony", such a suggestion is belied by appellant's representation.
[3] Ehrhardt, Florida Evidence § 401.1 (2d Ed. 1984); Graham, Handbook of Florida Evidence § 401.1 (1987).
[4] Notwithstanding this fact, the offense here was committed in a family type setting as was the Georgia offense. Although the appellant was not related to either victim and did not live in the same household, he "cultivated a very close relationship to the victim over a considerable period of time." See Stricklen v. State, 504 So.2d 1248 (Fla. 1st DCA 1986) and Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986). Thus, I believe that the focus of our inquiry should be the setting in which the crime was allegedly committed rather than the statutory section under which the appellant was charged. Additionally, my reading of the record persuades me that the Williams Rule offense and the established facts of the instant case are markedly similar, certainly similar enough to justify admissibility of this evidence for a purpose other than to corroborate the testimony of M.M. here. In each case the defendant contrived to be alone with the victim, a pre-pubescent child, who, in each case, was related to a woman with whom the defendant was carrying on a love relationship. After taking each child to get food, the defendant drove the victim to an isolated spot and proceeded to sexually assault her. After each episode, he warned the child not to tell what had transpired and drove the child home. I find it difficult to imagine testimony that would better establish a common plan, scheme or design on the part of appellant to subject the child victim here and in Georgia to sexual indignity.